UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE and RANDALL MENGES,<br><br><br>        Plaintiff,<br><br>      v.<br><br>LAWRENCE WASDEN, Attorney General of the State of Idaho; KEDRICK WILLS, Colonel of the Idaho State Police, LEILA MCNEILL, Bureau Chief of the Idaho State Police Bureau of Criminal Investigation; and THE INDIVIDUAL MEMBERS OF THE IDAHO CODE COMMISSION, all of the above in their official capacities,<br><br>        Defendants. | Case No. 1:20-cv-00452-BLW<br><br>**AMENDED MEMORANDUM DECISION AND ORDER (REDACTED)** |

**INTRODUCTION**

John Doe[1] and Randall Menges challenge the requirement that they register

for the Idaho Sex Offender Registry because of their Doe's conviction under ▮▮▮▮

---

[1] The Court granted Plaintiff John Doe's Motion to Proceed Under Pseudonym. (Dkt. 41). Accordingly, the Court issues this unsealed opinion for public view and redacts information that would reveal Doe's true identity.

**MEMORANDUM DECISION AND ORDER - 1**

█████'s Crime Against Nature statute and Menges's conviction under Idaho's

Crime Against Nature statute respectively. Defendants have filed a motion to

dismiss for failure to state a claim and lack of jurisdiction.[2] Plaintiffs have filed a

motion for a preliminary injunction. The Court held a hearing on April 7, 2021. For

the reasons that follow the Court will grant Defendants' motion to dismiss in part,

deny it in part, grant Plaintiffs' motion for preliminary injunction, and enjoin the

state from requiring Doe or Menges from registering as sex offenders in Idaho.

## BACKGROUND

### A.    John Doe

In ████ John Doe pled guilty to a charge filed under ███████████'s

Crime Against Nature statute.[3] The Information charging John Doe stated that Doe

"unlawfully, willfully, and feloniously did commit a crime against nature on [his

wife], to wit: oral sex."

Doe subsequently moved to Idaho and was arrested on charges unrelated to

this current action. When Doe was released from custody in 2020, Idaho State

---

[2] The State filed a motion to dismiss Doe's first complaint. Following the filing of the first motion to dismiss, Menges was joined as a Plaintiff and Plaintiffs filed an amended complaint. Therefore, Defendants first motion to dismiss (Dkt. 30) is moot.

[3] ████████████████████████████████████████████████████
████████████████████████████████████████████

Police, Bureau of Criminal Identification notified him that he was required to register as a sex offender pursuant to Idaho's Sex Offender Registration Notification and Community Right to Know Act (SORA), I.C. § 18-8301 *et seq.*, due to his prior conviction in ███████████.

It is not entirely clear how the ISP determined Doe's ███████████ conviction was substantially equivalent to Idaho's crime against nature. Pursuant to the Idaho Administrative Procedure Act (IDAPA) Rule 11.10.03.012 and Idaho Code § 18-8304(1)(b), the Bureau of Criminal Identification, Idaho Sex Offender Registry (SOR) has the authority to conduct a criminal history search to determine whether the statute that Doe was previously convicted under was "substantially equivalent" to an offense in Idaho that would require him to register. Defendants suggest that Bureau Chief of SOR, Leila McNeil, obtained judgments, convictions, charges, and police reports related to Doe's ███████████ conviction. However, none of the underlying documents were referenced in the notice sent to Doe. Instead, the notice simply states that "[t]he criminal elements contained in ███████████ ███████████'s crime against nature statute] are substantially equivalent to those found

**MEMORANDUM DECISION AND ORDER - 3**

in Idaho Code § 18-6605,[4] Crime Against Nature." Based on ISP's determination, Doe was ordered to register as a sex offender in Idaho for life pursuant to Idaho Code § 18-8304(1)(b).

### B.    Randall Menges

In 1993, Randall Menges was living at a 12-bed youth foster ranch in Gem County, Idaho. At the age of 18, Menges engaged in consensual sexual intercourse with two other male residents of the ranch. Both were 16 years old at the time. Gem County then charged Menges with three violations of Idaho's crime against nature statute. Menges pled guilty to one count of committing a crime against nature, I.C. § 18-6605. As a result of his conviction, Menges is required to register as a sex offender for life pursuant to Idaho Code § 18-8304(1)(a).

### C.    Statutory Structure

#### 1.  History of I.C. § 18-6605

Idaho's Crime Against Nature statute, a relic of the common law, has been in existence since Idaho was a territory. The revised codes of 1887 held that

---

[4] The elements of the ███████████ statute are (1) commission of a "crime against nature" with (2) mankind or beast. Notably, the statute does not require non-consent nor that the victim be under the legal age of consent. At the time of Doe's conviction, the ████████████ Supreme Court had interpreted the crime against nature statute broadly. *See* ██████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████.

"[e]very person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment in the Territorial prison not less than 5 years."[5] *Ex parte Miller*, 23 Idaho 403, 405 (1913) (quoting sec. 6810, Rev. Stats. of 1887). In 1913, the Idaho Supreme Court made its first foray into limiting the effect of the law when it found that the punishment for having oral or anal sex could not include the death penalty but could include life imprisonment. *Id.* at 406.

Codified in the early 1970s, the current version of the Crime Against Nature statute, I.C. § 18-6605, is identical to its territorial predecessor aside from updating the word "Territorial" to "state" prison. However, the Idaho Supreme Court has limited the application of the statute to ensure that its enforcement complies with the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003).

In May 2020, the Idaho Supreme Court noted that section 18-6605 does not contain an express requirement that the prohibited sexual contact be non-consensual. *State v. Gomez-Alas*, 167 Idaho 857, 864 (2020). Nonetheless, in order

---

[5] The Idaho Supreme Court has interpreted the Crime Against Nature statute to bar oral or anal sex. *State v. Altwatter*, 29 Idaho 107 (1916); *State v. Gomez-Alas*, 167 Idaho 857, 862 (2020) ("All unnatural copulation includes acts 'committed *per os* or *per anum*.'") (quoting *State v. Johnson*, 120 Idaho 408, 412 (Ct. App. 1991)).

to comply with *Lawrence*, the court proceeded to judicially impose a consent

requirement. *Id.*, at 864-65 ("Thus, Idaho's statute 'prohibiting the infamous crime

against nature may not be constitutionally enforced to prohibit

private *consensual* [sexual] conduct.'") (alteration in original) (emphasis in

original) (quoting *State v. Holden*, 126 Idaho 755, 761 (Ct. App. 1995)). Therefore,

the Idaho Supreme Court now reads § 18-6605 to apply only to non-consensual

sexual conduct.

### 2.  Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act

Idaho passed its initial sex offender registration law, the Sex Offender

Registration Act, in 1993. I.C. § 18-8301 *et seq.* (1993). In 1998, the Legislature

repealed that act and replaced it with the Sexual Offenders Registration

Notification and Community Right-to-Know Act, which, in amended form,

continues to operate today. I.C. § 18-8301 *et seq.*

#### a.  Determining "substantial equivalence" under § 18-8304(1)(b)

SORA applies to any persons convicted in Idaho of a laundry list of sexual

crimes, including Idaho's Crime Against Nature statute. I.C. § 18-8304(1)(a). In

addition to the specifically enumerated Idaho crimes that require registration,

section 18-8304(1)(b) requires any person to register who moves to Idaho and has

been convicted of an out-of-state sex crime that is "substantially equivalent" to an offense listed in section 18-8304(1)(a). *See Doe v. State*, 158 Idaho 778, 782–83 (2015).

Responsibility for determining whether an out-of-state sex crime conviction is "substantially equivalent" to an 18-8304(1)(a) crime falls on ISP's Bureau of Criminal Identification. IDAPA 11.10.03.012. In order to determine substantial equivalence, the Bureau is permitted to use "the police report (of the incident related to the sex offense), indictment or information or other lawful charging document, judgment or order (of sex offense conviction), psychosexual evaluation report, and order of probation." *Id.* The Bureau must make a substantial equivalency determination within sixty days of receiving the required documents. *Id.* The determination is considered a declaratory ruling under state law and judicial review of the decision is available in state court. *Id*. If a positive finding is made, the Bureau sends a Notice of Duty to Register to the relevant person, and that person has two working days to report to the County Sheriff for the county in which they reside.

### b.   *Registration Requirements*

Registration under SORA carries with it significant requirements and restrictions. The information that a registrant must provide to the State includes

current and former names, including nicknames, pseudonyms, and ethnic or tribal

names; email addresses, "instant messaging" addresses, and any other online

identity or screen name used for electronic communications; complete physical

description including scars and tattoos; date of birth; social security number;

residential address and a physical description of the residence; name and address of

any school the registrant attends; description and license plate number of any

vehicle used for personal or employment use; telephone number; addresses of

employment and volunteer positions; information related to any professional

licenses; passport information; a photocopy of any driver's license or identification

card; fingerprints; and a photograph. I.C. § 18-8305(1)(a–p). The Idaho State

Police disseminate information collected from each registrant to the United States

Attorney General, schools and public housing agencies in the area where the

registrant resides, volunteer organizations that work with kids or vulnerable adults

in the area where the registrant resides, and publishes it on a publicly accessible

website. I.C. § 18-8324(1).

Restrictions on a registrant's individual freedoms include prohibitions on

gaining employment at a day care center, group day care facility, or family day

care home, I.C. § 18- 8327(1); absent certain limited exceptions, from living within

five hundred of a school used by children, I.C. § 18-8329(1)(d); and from picking

up or dropping off their own children at school without prior notification and annual written approval of the school, I.C. § 18-8329(2).

Further, the registrant must pay an $80 annual fee. I.C. § 18-8307(2). And, failure to register is punishable by up to 10 years of imprisonment and a fine of up to $5,000. I.C. § 18-8311(1).

## LEGAL STANDARD

### A.    Motion to Dismiss

#### 1.  12(b)(1)

The Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) arguing that this court lacks subject matter jurisdiction to hear this case.  A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. The defendants' attack here is factual, as it relies on extrinsic evidence and does not assert lack of subject-matter jurisdiction based solely on the pleadings.

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a

motion for summary judgment. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242). The court need not presume the truthfulness of the plaintiff's allegations. *White*, 227 F.3d at 1242; *Safe Air for Everyone*, 373 F.3d at 1039.

### 2.   12(b)(6)

Defendants also move for dismissal under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief can be granted. In resolving a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint.  However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.   Preliminary Injunction

Doe and Menges move for a preliminary injunction to enjoin the State from requiring them to register as sex offenders. To obtain preliminary injunctive relief, Doe and Menges must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 24 (2008). When the government is a party, the court considers the balance of equities and the public interest together. *Drakes*

*Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

## ANALYSIS

Plaintiffs challenge Idaho's requirement that they register as sex offenders for their pre-*Lawrence* crime against nature convictions. Plaintiffs allege that, because a finding of lack of consent was not required at the time they were convicted, Idaho violates their rights to substantive due process by requiring them to register based solely on the judgment of conviction. Doe additionally argues that, to the extent the State looks to facts beyond the judgment of conviction, it violates his right to procedural due process by not providing a pre-deprivation hearing. Menges also argues that Idaho violates his right to equal protection because he is required to register as a sex offender for his Crime Against Nature conviction, but others are not required to register for other convictions based on equivalent acts. Finally, Plaintiffs challenge Idaho Code § 18-6605 as violative of their of their rights to due process and as unconstitutionally vague.  The Court will address each of these arguments, after first considering (1) the Defendants' argument that the claims should be dismissed for mootness, a lack of standing, the bar of *Heck v. Humphrey*, and (2) the Plaintiff's request that the Court declare Idaho's crime against nature statute, I.C. § 18-6605, facially unconstitutional.

### A.    Menges' Claims Are Not Moot

The day before the hearing on the motions, the Defendants filed a motion to supplement pleadings alleging that Menges had moved to Montana. Dkt. 71. Idaho then undertook procedures to remove Menges from the Idaho Sex Offender Registry. Essentially, Defendants attempt to use their motion to supplement to put forward the argument that Menges lacks standing to challenge the Idaho sex offender registration statute and that his claims are moot.

It is undisputed that at the time Menges' amended complaint was filed he was residing in Idaho and was registered on the Idaho sex offender registry. Menges' relocation to Montana does not call into question his standing to sue. "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).

The state has also not demonstrated that Menges' claims are moot. Menges is required to register as a sex offender within two days of returning to his home state of Idaho either to reside, for work, or for education. *See* I.C. §§ 18-8303(15) (defining "residence"), 18-8304(1)(e) (requiring registration when "working in Idaho" or a student here), 18-8303(6) (defining employment to include part-time and volunteer work), 18-8307(4) (requiring registration within two days of residence or employment). Defendants have not met their burden of establishing

that there is no effective relief for the Court to provide for Menges. At this stage of the litigation it is quite likely that Menges will return to Idaho and be required to register as a sex offender. Therefore, his claim is not moot. *See Gonzalez v. Metro. Transp. Auth.*, 73 F. App'x 986, 988 (9th Cir. 2003).

### B.    Standing

Article III limits the jurisdiction of federal courts to "cases" and "controversies." *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir.1993). "Federal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record." *Id.* (citation and internal quotation marks omitted). Standing is an essential, core component of the case or controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing their standing to sue. *Id.* at 561. To do so, they must demonstrate three elements which constitute the "irreducible constitutional minimum" of Article III standing. *Id.* at 560. First, plaintiffs must have suffered an "injury-in-fact" to a legally protected interest that is both "concrete and particularized" and "actual or imminent," as opposed to "'conjectural' or 'hypothetical.'" Second, there must be a causal connection between their injury and the conduct complained of. Third, it must be "likely"—not merely "speculative"—that their injury will be "redressed

by a favorable decision." *Id.* at 560–61 (citations omitted). Because Plaintiffs seek declaratory and injunctive relief only, there is a further requirement that they show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury. *Bras v. California Pub. Util. Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995).

Here both Menges and Doe have standing to bring this lawsuit. Because of their previous convictions, both Menges and Doe are required to register as sex offenders for life or face criminal prosecution. This is a very real injury. Further, if the Court grants their requested relief they will no longer be required to register.

### C.    Heck v. Humphrey

Defendants argue that Plaintiffs' claims are barred under *Heck v. Humphrey,* 512 U.S. 477 (1994). "*Heck* bars a § 1983 action that would imply the invalidity of a prior conviction if the plaintiff could have sought invalidation of the underlying conviction via direct appeal or state post-conviction relief, but did not do so." *Martin v. City of Boise*, 920 F.3d 584, 613 (9th Cir. 2019).

In *Martin*, the plaintiffs brought a § 1983 action challenging the City of Boise's ordinances prohibiting the homeless from camping or sleeping on public property. *Id.* at 603-04. The Ninth Circuit held that *Heck* bars retrospective relief – including expunging plaintiffs' records, recovering court costs and fines, and

damages. The Ninth Circuit then held that *Heck* did not bar the plaintiffs from

obtaining prospective injunctive relief. Specifically, the Ninth Circuit found that

*Heck* had no application to the plaintiffs' request for injunctive relief prohibiting

the City from prosecuting them for sleeping in public spaces when homeless

shelters were full. *Id.* at 615.

To be sure, the contours of the *Heck* doctrine are not entirely clear. For

instance, does finding a criminal statute facially unconstitutional call into question

a previous conviction under that statute? It would seem so. But, the Ninth Circuit

found that the City of Boise's enforcement of its ordinances violated the Eighth

Amendment when there were no beds in homeless shelters available. Many of the

plaintiffs' previous convictions were for sleeping in public places when no beds

were available in shelters. Yet, the Ninth Circuit found that declaring the

ordinances unconstitutional, in the same situation, in the future, did not call into

question those previous convictions. The Ninth Circuit made clear however, that

it's holding was a narrow one—only that the City could not prosecute individuals

in the future for sleeping in public when there were no shelter beds available. In

*Martin*, the Ninth Circuit did not pass on the facial validity of the challenged

ordinances.

The reality of the *Martin* holding seems to be that the Court may hear a

plaintiff's § 1983 challenge to the enforcement of a statute even where that plaintiff has been convicted under the statute, so long as the plaintiff only requests prospective relief.

Ultimately, *Heck* is of little matter in this case. Menges was convicted under I.C. § 18-6605 and *Heck* may bar his direct challenge to I.C. § 18-6605. But, Doe was convicted under the ███████ Crime Against Nature statute. And, finding that I.C. § 18-6605 is unconstitutional would in no way call into question his conviction under the ███████ statute.

Further, both Menges and Doe challenge the Idaho sex offender registration statute. Both Doe and Menges admit that their convictions were constitutional at the time they were entered. A finding that the Idaho sex offender registration statute is unconstitutional for a pre-*Lawrence* conviction does not call into question the original conviction. *Neal v. Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997); *Menges v. Knudsen*, 2021 WL 1894154, at *9 (D. Mont. May 11, 2021). As the Ninth Circuit held in *Martin*, *Heck* is inapplicable when the plaintiff seeks prospective relief from an unconstitutional statute, which is true here.

### D.    I.C. 18-6605

#### 1.  Due Process

Plaintiffs primarily focus their lawsuit on the Idaho sex offender registration

requirement for their previous crime against nature convictions. But, they also ask the Court to declare the Idaho crime against nature statute, I.C. § 18-6605, facially unconstitutional. This is essentially a standalone facial challenge to Idaho's crime against nature statute. Doe also argues that I.C. 18-6605 is unconstitutional as applied to him through the State's equivalency determination.

There are multiple problems with Plaintiffs' standalone challenge to I.C. § 18-6605.

First, Plaintiffs complain that Idaho's reliance on their pre-*Lawrence* crime against nature convictions cause their injury. But, at the same time, they argue that they are in no way seeking to call into question their previous convictions.

There is a distinct tension in Menges' argument that on the one hand he is not challenging his underlying conviction under I.C. § 18-6605, but the statute is unconstitutional as applied to him. If, indeed the statute—standing alone—is unconstitutional as applied to him he may be able to have his conviction vacated through a post-conviction proceeding.

It is helpful to think about Menges' claim as though Idaho did not require him to register as a sex offender for his previous conviction. He is not seeking to prevent future prosecutions under the statute, unlike the plaintiffs in *Martin*. Instead he is seeking to avoid the collateral consequences of his conviction by

having the Court find the statute unconstitutional. If a conviction under I.C. § 18-6605 was not a registrable offense, then Menges would not be able to challenge the constitutionality of the statute through a § 1983 action unless he was planning to violate the statute again—like the plaintiffs in *Martin*. Instead, he would have to challenge the statute, and his conviction, through a post-conviction proceeding.

Second, it is important to understand what the protected liberty interest at issue is in this case. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Here both Menges and Doe assert that they have a protected liberty interest in being free from registering as sex offenders. Neither Doe nor Menges argue that they have any intention of violating I.C. § 18-6605 in the future. Nor do they suggest they have a protected liberty interest in having nonconsensual oral or anal sex.

Instead, relying on *Lawrence*, Plaintiffs argue that the State's reliance on their previous convictions—which they acknowledge were constitutional at the time they were entered—to require them to register as sex offenders now violates due process. Plaintiffs argue that the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), invalidated all statutes that solely prohibit oral or anal sex.

As the Ninth Circuit has observed "the bounds of Lawrence's holding are unclear." *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d

**MEMORANDUM DECISION AND ORDER - 18**

450, 456 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018) (quoting *In re Golinski*, 587 F.3d 901, 904 (9th Cir. 2009)). The Ninth Circuit has not read *Lawrence* as striking down all laws that prohibit sodomy. Instead, in *Anderson v. Morrow* the Ninth Circuit stated that:

> The *Lawrence* Court held that the Due Process Clause of the Fourteenth Amendment protects the right of two individuals to engage in fully and mutually consensual private sexual conduct. The holding does not affect a state's legitimate interest and indeed, duty, to interpose when consent is in doubt.

371 F.3d 1027, 1032-33 (9th Cir. 2004).

Likewise in *Cook v. Reinke*, 484 Fed. Appx. 110 (9th Cir. 2012), the Ninth Circuit upheld the District Court's denial of the petitioner's habeas corpus petition for his conviction under § 18-6605. There the Ninth Circuit found that the conviction was not contrary to *Lawrence* because the Idaho Court of Appeals concluded that § 18-6605 could not be used to criminalize sex occurring in private between consenting adults. *See also United States v. Laursen*, 847 F.3d 1026, 1034 (9th Cir. 2017) (noting that constitutional protection has not been extended to sexual relationships between adults and children).

When determining whether a state statute is constitutional the court should defer to the state supreme court's interpretation of the statute. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 75 (1997); *Nunez by Nunez v. City of San Diego*,

114 F.3d 935, 939-40 (9th Cir. 1997). This is because "a State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975).

In 1995, the Idaho Court of Appeals held that I.C. § 18-6605 could not be applied to the private consensual acts of married couples. *State v. Holden*, 126 Idaho 755, 762 (Ct. App. 1995). Then in *State v. Gomez-Alas*, 167 Idaho 857, 866 (2020) the Idaho Supreme Court held that I.C. § 18-6605 "can only be enforced in circumstances…where the infamous crime against nature is committed in a nonconsensual manner."

The Idaho Supreme Court's interpretation of I.C. § 18-6605 brings it well within the holding of *Lawrence*.

Thus, to the extent that Doe argues that the State cannot compare his previous conviction to I.C. § 18-6605, as it exists after *Gomez-Alas*, his argument fails. Likewise, Idaho does not violate Menges' substantive due process rights by relying on his previous conviction under § 18-6605 so long as the elements of that conviction were the same as the elements of conviction under the statute after *Gomez-Alas*.

Accordingly, the Court finds that Plaintiffs have failed to state a claim that I.C. § 18-6605, standing alone, is unconstitutional either facially or as applied to

them. The Court will grant Defendants' motion to dismiss to the extent Plaintiffs

seek to have § 18-6605 declared unconstitutional.

### 2. Vagueness

Plaintiffs next argue that I.C. § 18-6605 is unconstitutionally vague. They

then argue that by extension I.C. § 18-8304 is also unconstitutionally vague to the

extent it relies on a conviction under I.C. § 18-6605.

The void for vagueness doctrine is rooted in the Due Process Clause of the

Fifth Amendment. *United States v. Williams*, 553 U.S. 285, 304 (2008). "The Fifth

Amendment provides that '[n]o person shall ... be deprived of life, liberty, or

property, without due process of law,' " and "the Government violates this

guarantee by taking away someone's life, liberty, or property under a criminal law

[1] so vague that it fails to give ordinary people fair notice of the conduct it

punishes, or [2] so standardless that it invites arbitrary enforcement." *Johnson v.*

*United States*, 576 U.S. 591, 595 (2015) (*citing Kolender v. Lawson*, 461 U.S. 352,

357-58 (1983)). A criminal statute violates the "fair notice" requirement if it "fails

to give a person of ordinary intelligence fair notice that his contemplated conduct

is forbidden by the statute." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979)

(internal quotation marks omitted). A statute violates the "arbitrary enforcement"

requirement if it is "so indefinite that it encourages arbitrary and erratic arrests and

convictions." *Id*. (internal quotation marks omitted). In other words, "ordinary notions of fair play and the settled rules of law," *Johnson*, 576 U.S. at 595, are violated if police officers, prosecutors, and judges are essentially "defining crimes and fixing penalties" by filling statutory gaps "so large that doing so becomes essentially legislative," *United States v. Evans*, 333 U.S. 483, 486-87 (1948).

In scrutinizing a state statute for intolerable vagueness, courts must "take the statute as though it read precisely as the highest court of the State has interpreted it." *Wainwright v. Stone*, 414 U.S. 21, 22-23 (1973) (quoting *Minnesota ex rel. Pearson v. Probate Court*, 309 U.S. 270, 273 (1940)). "When a state statute has been construed to forbid identifiable conduct so that 'interpretation by (the state court) puts these words in the statute as definitely as if it had been so amended by the legislature,' claims of impermissible vagueness must be judged in that light." *Id.* at 23 (quoting *Winters v. New York*, 333 U.S. 507, 514 (1948)).

A statute may be challenged for vagueness either "on its face" or "as applied." *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984).[6] A

---

[6] The Court in *Schwartzmiller* indicated that the state court's interpretation is particularly applicable in an as applied challenge, but the Supreme Court has repeatedly held that a state supreme court's interpretation of a statute must be considered in either a facial or as applied challenge. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.5 (1982) (facial challenge); *Wainwright v. Stone*, 414 U.S. 21, 22 (1973) (as applied challenge).

facial vagueness challenge is mutually exclusive from an as applied challenge. *Id.* A party has standing to challenge a statute facially if "no standard of conduct is specified at all." *Id.* at 1347 (quoting *Parker v. Levy*, 417 U.S. 733, 755 (1974)). This means that the statute must be "impermissibly vague in all of its applications." *Id.* (quoting *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).

Here, I.C. § 18-6605 provides:

Every person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment in the state prison not less than five years.

The Idaho Supreme Court has construed I.C. § 18-6605 as prohibiting "all unnatural carnal copulations committed *per os* or *per anum*."[7] *State v. Gomez-Alas*, 167 Idaho 857, 863 (2020). Further, the crime against nature must be "committed in a nonconsensual manner." *Id.* at 866.

It is not entirely clear whether Plaintiffs challenge the statute facially or as applied. In their complaint, Plaintiffs request that the Court declare I.C. § 18-6605 unconstitutionally vague and enjoin its enforcement in any situation involving human beings—ignoring the portion of the statute related to bestiality. *Amd.*

---

[7] *Per os* or *per anum* means either oral or anal copulations, respectively. *See* SODOMY, Black's Law Dictionary (11th ed. 2019)

*Compl.* at 17, Dkt. 39. Doe also alleges that I.C. § 18-6605 is unconstitutionally vague as applied in determining whether he must register for his crime against nature conviction in ███████████. *Id.* at 18. Plaintiffs then go on to allege that I.C. § 18-8304 is unconstitutionally vague because it relies on I.C. § 18-6605 to determine if someone must register.

Irrespective of whether Plaintiffs challenge I.C. § 18-6605 facially or as applied, their challenge fails.[8] The statute does not "impinge on or 'chill'" constitutionally protected conduct. *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1348 (9th Cir. 1984). Thus, any facial challenge fails. Further, through interpretation by the Idaho Supreme Court, the statute provides fair notice of what is prohibited—nonconsensual anal or oral sex. Finally, it is not so standardless as to invite arbitrary enforcement.

───────────────

[8] The vagueness doctrine is perhaps one of the most pernicious forms of legal fiction. On the one hand, a criminal statute must give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979). But, on the other hand, courts, and would be criminals, must look not just to the face of the statute but also to law dictionaries, treatises, and state court opinions to determine what conduct may be prohibited and whether the statute is unconstitutionally vague. This is a tall order for the most sophisticated attorney, but provides an almost impenetrable task for someone uneducated in the law. *See* John Calvin Jeffries, Jr., *Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L. Rev. 189, 206 (1985). This particular statute, more than any other, illustrates the problems with the vagueness doctrine as it exists today. In 2021, a person of common intelligence is more likely to interpret the "infamous crime against nature" as littering, poaching, or perhaps unpermitted discharge of pollutants, instead of sodomy. If the Court were working from a blank slate, it would easily find the statute void for vagueness. But, the Court is not free to ignore precedent.

**MEMORANDUM DECISION AND ORDER - 24**

Because I.C. § 18-6605 is not unconstitutionally vague, I.C. § 18-8304's

reliance on it does not make the sex offender registration statute unconstitutionally

vague. Indeed, if an individual has been convicted of nonconsensual oral or anal

sex then they are on notice that they must register as a sex offender in Idaho.

Therefore, the Court will grant Defendants' motion to dismiss as to Plaintiffs'

vagueness claim.

### E.    Idaho's Sex Offender Registration

Having resolved the challenges to § 18-6605, the Court turns to Plaintiffs'

allegations regarding the Idaho sex offender registration statute and the

requirement that they register as sex offenders for their pre-*Lawrence* crime against

nature convictions. Although Plaintiffs did not state a plausible claim for relief as

to their standalone challenges to § 18-6605, this does not foreclose their challenges

to the sex offender registration statute and Idaho's administration of the sex

offender registry.

Under the Idaho Sexual Offender Registration Notification and Community

Right-to-Know Act, I.C. § 18-8301 *et seq.*, anyone convicted of the infamous

crime against nature, I.C. § 18-6605, after 1993 must register as a sex offender for

life. I.C. §§ 18-8304(1)(a) (listing registrable offenses), 18-8307(7) (registration

for life). Pursuant to I.C. § 18-8304(1)(b), anyone convicted of a crime outside the

state of Idaho, which the Idaho State Police, Bureau of Criminal Identification

determines is "substantially equivalent" to a crime listed in 18-8304(1)(a) must

register as a sex offender for life. Pursuant to IDAPA 11.10.03.012.07, in

determining whether an offense is substantially equivalent to a crime listed in 18-

8304, the Bureau may use the police report, any charging documents, judgment or

order of conviction, psychosexual evaluation report, and order of probation.

On ███████████, Doe was charged by information in ███████████

with committing "a crime against nature on [his wife], to wit oral sex" in violation

of ███████████████████. Dkt. 51-1 at 6. Doe eventually pled

guilty.

On ███████████, the Bureau of Crime Identification sent Doe a notice

of his duty to register as a sex offender. Dkt. 51-1 at 9. The notice indicates that the

Bureau had reviewed Doe's ███████████ conviction and found that it was

substantially equivalent to Idaho's crime against nature. The only findings of fact

in the notice are that, on ███████████, Doe was convicted of one count of

violating ███████████████████, Crime Against Nature. *Id.* at

10. The conclusion of law states that "[t]he criminal elements contained in ██████

███████████████████, Crime Against Nature are substantially

equivalent to those found in Idaho Code § 18-6605, Crime Against Nature." *Id.*

Defendants argue that the Bureau considered the police report and original indictment in Doe's case to determine whether his crime was substantially equivalent to IC § 18-6605. Defendants have submitted unauthenticated copies of the police report and other documents from Doe's ███████████ case. The notice provided to Doe does not reference these materials, it only indicates that the elements of the ████████████████████, under which he was convicted, are substantially equivalent as those of I.C. § 18-6605. As will be explained below, if Defendants solely relied on the elements of the ██████████ crime against nature statute, as it existed when Doe pled guilty, they violated his rights to substantive due process. If they did rely on the underlying documents, but did not provide him a pre-deprivation hearing, they violated his right to procedural due process.

Menges pled guilty to violating I.C. § 18-6605 in 1994, when he was 18. Neither side has introduced Menges' judgment of conviction, but it appears that Menges is required to register solely on the basis of his 1994 conviction. As will be explained below, this violated Menges rights to substantive due process and equal protection.

### 1.  Substantive Due Process

The Due Process clause of the Fourteenth Amendment prohibits a State from

depriving "any persons of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. It is well understood that this clause has both substantive and procedural components. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). The substantive component to the Due Process Clause is designed to provide protection against governmental interference with certain fundamental rights and liberty interests. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). While fundamental liberty interests require that any state infringement of these rights be "narrowly tailored to serve a compelling state interest," state actions that implicate anything less than a fundamental right require only that the government demonstrate "a reasonable relation to a legitimate state interest to justify the action." *Glucksberg*, 521 U.S. at 722.

There are two liberty interests at issue in this case. The first is the right to engage in private, consensual sexual conduct. *Anderson*, 371 F.3d at 1032 (discussing *Lawrence v. Texas*, 539 U.S. 558 (2003)). The second is the liberty interest in being free from being labelled as a sex offender and the myriad of state-imposed restrictions and requirements that comes with being required to register as a sex offender. *See Neal v. Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997); *Fletcher v. Idaho Dep't of Correction*, 2020 WL 7082690, at *6 (D. Idaho Dec. 3, 2020).

Both Doe and Menges are required to register on the basis of their pre-

*Lawrence* crime against nature convictions. At the time of their convictions it was constitutional for a state to prosecute individuals for engaging in consensual oral or anal sex. *Bowers v. Hardwick*, 478 U.S. 186 (1986); *State v. Gomez-Alas*, 167 Idaho 857, 866 (2020); *State v. Whiteley*, 616 S.E.2d 576, 579 (2005).

It was not until 2003, when the Supreme Court decided *Lawrence*, that it became unconstitutional for a state to prosecute an individual for engaging in consensual oral or anal sex. "The *Lawrence* Court held that the Due Process Clause of the Fourteenth Amendment protects the right of two individuals to engage in fully and mutually consensual private sexual conduct." *Anderson v. Morrow*, 371 F.3d 1027, 1032-33 (9th Cir. 2004).

The Information that Doe pled guilty to only alleges that he "commit[ed] a crime against nature on [his wife], to wit: oral sex." Dkt. 51-1 at 6. There is no element of non-consent within the information nor the judgment of conviction. Likewise, Menges pled guilty to one count of crime against nature. *See* Dkt. 49-3 at 2. The State has put forward no evidence that Menges pled guilty to a nonconsensual sex act. Instead, the evidence tends to show the exact opposite—that the sexual conduct Menges pled guilty to was entirely consensual.

The State can have no legitimate interest in requiring Doe and Menges to register as sex offenders for engaging in private, consensual sexual acts. To the

extent the state bases its determination that Doe and Menges must register on the

fact of a pre-*Lawrence* crime against nature conviction, lacking any element of

non-consent in the judgment of conviction, it violates both their right to engage in

private consensual sexual activity and to be free from the burdens of sex offender

registration.

## 2.  Procedural Due Process

The right to procedural due process arises only when a constitutionally

protected interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Therefore, courts analyze procedural due process claims in two parts. First, the

Court must determine whether the plaintiff possessed a constitutionally protected

interest. *See Brown v. Or. Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014). If

not, the inquiry ends. If, however, the plaintiff shows that he had a liberty or

property interest of which the government deprived him, the Court must then

consider, on a case-by-case basis, whether the plaintiff received the process that he

was due. *See Wolff v. McDonnell*, 418 U.S. 539, 560 (1974). That is, a due process

claim lies only where (1) the plaintiff was deprived of a protected interest, and (2)

the state's procedures were constitutionally inadequate.

In *Connecticut Department of Public Safety v. Doe* ("*CDPS*"), 538 U.S. 1

(2003), the Supreme Court rejected the respondent's procedural due process

challenge to Connecticut's sex offender registry law. The Court held, because "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest" through trial, any hearing to establish a fact that was not material under the statute is a "bootless exercise." *Id.* at 7-8. The Court then went on to explain that "[p]laintiffs who assert a right to hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8.

In *Doe v. Tandeske*, 361 F.3d 594 (9th Cir. 2004), the Ninth Circuit rejected a procedural due process challenge to Alaska's sex offender registration statute. Relying on *CDPS*, the Ninth Circuit stated "… Alaska's sex offender statute bases the registration and notification requirements on the sole fact of plaintiffs' convictions. Accordingly, … we hold that [the] registration law does not deprive [plaintiffs] of procedural due process."

Unlike the plaintiffs in *CDPS* or *Tandeske*, here the State argues that the Bureau of Criminal Identification did not rely *solely* on Doe's conviction as the

basis for requiring him to register.[9] Instead, the State argues that it has looked

through his conviction to the original indictment and police reports to determine

whether there was an element of non-consent underlying Doe's ████████

conviction. Dkt. 45 at 5. If, as the State argues, it relied on documents beyond the

"fact of conviction" to determine whether Doe must register, then procedural due

process requires it provide Doe a pre-deprivation hearing. *See Neal v. Shimoda*,

131 F.3d 818, 831 (9th Cir. 1997).

     As previously discussed, Doe has a protected liberty interest in being free

from registering as a sex offender.[10] Not only is Doe publicly labelled as a sex

---

[9] The State argues that, because the police report and other records related to Doe's ████ ████ conviction were filed in a separate State Court proceeding, this Court can take Judicial Notice of them. Dkt. 45 at 5. This is incorrect. The Court "may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention or cause then before it." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (citing 29 Am.Jur.2d Evidence § 58 (1967)). *See also* 21B Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.). The State alleges that most of its exhibits were contained in the Bureau's file on Doe and used to make the substantial equivalence determination. But, it has not authenticated any of its exhibits, nor has it explained how particular documents are admissible. *See* Fed. R. Evid. 901, 902. Finally, many of the documents contain inadmissible hearsay, which, even if the documents are authenticated, the Court may not take Judicial notice of. *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).

[10] Menges also raises a procedural due process claim. There is, however, no allegation that the state looked through his judgment of conviction to determine whether he must register. Indeed, the Idaho sex offender registration statute does not provide any ability for the Bureau of Criminal Identification to look through the judgment of conviction to determine whether someone convicted in Idaho must register. The only trigger for registration is the fact of conviction. At this stage in the litigation, Menges has demonstrated a likelihood of success on (Continued)

**MEMORANDUM DECISION AND ORDER - 32**

offender, but he is also required to annually pay a registration fee and update his registration. He is limited in where he can live, what jobs he can hold, and places he can frequent.

Where, as here, there is a protected liberty interest, the court then uses the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation. *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017). The *Mathews* test balances three factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional safeguards; and (3) the government's interest, including the burdens of additional procedural requirements. *Mathews*, 424 U.S. at 335.

First, Doe's private interest in being free from having to register as a sex offender for life is substantial. Not only is he publicly labelled as sex offender, but he must bear the attendant burdens of registration for the rest of his life.

The only recourse Doe has for an erroneous "substantial equivalence"

---

the merits of his substantive due process claim. If, later in the litigation, it appears that the State somehow looks through Menges judgment of conviction he can litigate his procedural due process claim. Ultimately, the same analysis that applies to Doe would likely also apply to Menges.

determination is to appeal the Bureau's order to an Idaho district court within 28 days of the order. *State v. Glodowski*, 166 Idaho 771, 776 (2020). If Doe fails to appeal within 28 days, he is barred from directly challenging the determination. *Id.* Instead he must seek to be released from registration as provided by I.C. §18-8310.

Both the nature and weight of the deprivation, including the potential length of time of the deprivation, weigh heavily in favor of a pre-deprivation hearing. *See Mackey v. Montrym*, 443 U.S. 1, 12 (1979) (length of automatic drivers license suspension and availability of immediate post-suspension hearing weighed against need for pre-deprivation hearing).

Second, the risk of erroneous deprivation and value of additional safeguards weigh in favor of a hearing.

In *Mackey*, the drivers license would only be suspended after the driver was arrested for driving under the influence, probable cause existed for the arrest, and the driver refused to take a breath-analysis test. 443 U.S. at 13-14. Further, the driver's refusal had to be witnessed by two law enforcement officers. *Id.* at 14. There, the Court found it important that the officers would have firsthand knowledge of the arrest, including the driver's actions and statements, thus reducing the risk of error.

Here, unlike *Mackey*, the State relies on police reports and other

documentation generated over 20 years before requiring Doe to register. While these documents may be reliable, they also may not.  And, under the State's current scheme, there is no way to know. The information relied on by the State has not been tested through cross examination and Doe cannot challenge its veracity prior to the Bureau making its substantial equivalency determination. Further, any documents in Doe's case suggesting an element of non-consent are not supported by the final judgment in the case. Finally, it also does not appear that the Bureau notifies Doe that it is performing a substantial equivalence determination until the determination has already been made and he is notified that he must register as a sex offender within two days or face substantial criminal penalties. *See* Dkt. 51-1 at 9. Thus, he has no opportunity to challenge the Bureau's determination until it is too late.

Considering the risk of erroneous deprivation, there is significant value in providing additional safeguards. Doe does not have the opportunity to provide any input in the substantial equivalence determination until it is made. If Doe was afforded a predeprivation hearing he would be able to challenge the assertions in the underlying documents. But, as it currently stands he is subject to the Bureau's reliance on hearsay within historical documents with no opportunity to correct the record.

Third, then, is the State's interest, including the burdens of additional procedural requirements. The State's interest in requiring sex offenders to register to inform and protect the public is well established. *See CDPS*, 538 U.S. 1, 4 (2003).[11] The parties did not meaningfully address the *Matthew* factors, and the Court will not speculate as to the burden on the State other than to observe that adding a pre-deprivation hearing would not significantly interfere with the State's ability to determine whether an offender must register.

In most cases the State will only need to look to the elements of the foreign conviction and will not need to rely on case related documents. However, in the limited cases, like Doe's, where the state looks through the judgment of conviction to the underlying reports and documents, it will be able to factor a pre-deprivation hearing into its substantial equivalence determination and ensure that an offender is still registered in a timely fashion. The Court does not see how a pre-deprivation hearing would significantly increase the burden on the State, nor would it need to seriously delay the registration of an offender who committed a substantially equivalent offense.

At this point in the litigation, and without more definite briefing on the issue,

---

[11] *But see,* Ira Mark Ellman & Tara Ellman*, "Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 Const. Comment. 495, 502 (2015).

the Court does not need to determine how formal a pre-deprivation hearing may need to be. It is sufficient, for now, that the State must afford Doe some opportunity to be heard before subjecting him to a lifetime of sex offender registration for a pre-*Lawrence* crime against nature conviction.

### 3.  Equal Protection

In 1994, when Menges was 18, he pled guilty to and was convicted of a crime against nature for having consensual sex with a 16-year-old male. Dkt. 49-3 at 2. Since that conviction, the State has required Menges to register as a sex offender. Menges claims that Idaho violates his right to equal protection by requiring him to register for this crime when it would not require an 18-year-old male who had consensual sex with a 16-year-old female to register.

The equal protection clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const., amend. XIV, § 1). The equal protection guarantee is in tension with the reality that laws almost inevitably draw lines between groups of people, advantaging some and disadvantaging others. *Romer v. Evans*, 517 U.S. 620, 631 (1996).

In analyzing Equal Protection claims, the Court's "first step ... is to identify the state's classification of groups." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (quoting *Country Classic Dairies, Inc. v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)). Once a classified group has been identified, the Court "identifies a control group composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy." *Id.* (citations omitted). If the two groups are similarly situated, the court determines the appropriate level of scrutiny and then applies it. *Id*.

Menges suggests that his classification group is that of 18-year-old males who have had otherwise consensual sex with a 16-year-old male. He argues the control group is 18-year-old males who have had consensual sex with a 16-year-old female. The State argues that Menges is differently situated than an 18-year-old male who had consensual sex with a 16-year-old female because Menges was convicted for a crime against nature and the ostensibly straight 18-year-old male would have been convicted of statutory rape. While this argument initially has some appeal, upon closer inspection it fails.

In 1994, the State of Idaho criminalized statutory rape between any male and a female under 18 years old. *See* 1994 Idaho Sess. Laws Ch. 83 (H.B. 607) (codified at 18-6101). Between 1993 and 1998 any conviction for rape, including

statutory rape, required an individual to register as a sex offender. *See* 1993 Idaho Sess. Laws Ch. 155 (S.B. 1002) (codified at I.C. § 18-8303). When the Idaho sex offender registration statute was passed in its current version the registration requirement for individuals convicted of statutory rape was removed.[12] *See* 1998 Idaho Sess. Laws Ch. 411 (S.B. 1297) (codified at I.C. § 18-8304). Now, the Idaho sex offender statute requires individuals convicted of rape, under I.C. § 18-6101, to register. But, the statute specifically excludes individuals convicted under I.C. § 18-6101(1) where the defendant is eighteen years of age. I.C. § 18-8304(1)(a).

When Menges was convicted in 1994 he could not have been prosecuted for statutory rape.[13] When the State removed the registration requirement for individuals convicted of statutory rape it functionally drew a distinction between an 18-year-old male who had consensual sex with a 16-year-old female and an 18-year-old male convicted of having otherwise consensual sex with a 16-year-old male.

---

[12] In 2010, the Idaho rape law was amended such that it was no longer a crime for an 18-year-old male to have otherwise consensual sex with a female who is 16 or older. 2010 Idaho Sess. Laws Ch. 352 (S.B. 1385) (codified at I.C. 18-6101).

[13] In 2016 the State revised its rape law to make it gender neutral by replacing "female," "she," and "her," with "victim." 2016 Idaho Sess. Laws Ch. 296 (H.B. 580). Until 2016, the statutory rape law only applied to males who had sex with females. *See State v. Joslin*, 145 Idaho 75, 83 (2007). Until 2016, the State could not prosecute an 18-year-old male who had sex with a 16-year-old male under the statutory rape law.

**MEMORANDUM DECISION AND ORDER - 39**

Thus, the Court finds that the appropriate classification group is, like Menges, 18-year-old males who were convicted in 1994, under I.C. §18-6605, who engaged in consensual oral or anal sex with a 16-year-old male. The control group is composed of 18-year-old males who were convicted in 1994, under Idaho Code § 18-6101, for engaging in consensual vaginal sex with a 16-year-old female. These groups are similarly situated in all respects. Both are comprised of males who, at the age of 18, engaged in consensual sex with a 16-year-old. The only difference in the groups is the sex of their partner and whether they engaged in oral or anal sex or vaginal sex. *Menges v. Knudsen*, 2021 WL 1894154, at *19 (D. Mont. May 11, 2021).

The Court next turns to the appropriate level of scrutiny. Menges argues that the law cannot survive rational basis review. A law that neither targets a suspect class nor burdens a fundamental right is subject to rational basis scrutiny. *Heller v. Doe*, 509 U.S. 312, 319-21 (1993). Like the court in *Menges v. Knudsen*, this Court has concerns that a law which draws distinctions based on both gender and sexual orientation needs to survive more than rational basis review. [14] 2021 WL 1894154,

---

[14] This concern is heightened by the discriminatory and arbitrary enforcement of the Idaho crime against nature statute. The Crime Against Nature statute in Idaho has been used to (Continued)

at *20 (discussing *Obergefell v. Hodges*, 576 U.S. 644, 680–81 (2015) and *Bostock v. Clayton Cty Ga.*, 140 S. Ct. 1731, 1754 (2020)). But, the Court does not need to resolve the issue because the distinction drawn by Idaho's sex offender registration law cannot survive even rational basis review.

Under rational basis review, the Court presumes the law is valid unless the challenger can show the difference in treatment bears no rational relation to a conceivable government interest. *Id*. "A classification does not fail rational-basis review because it 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Id*. at 321 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). But, even under this most deferential standard, the "State may not rely on a classification whose relationship to the asserted goal is so attenuated as to render the decision arbitrary or irrational." *Cleburne*, 473 U.S. at 446. For this

---

target, condemn, and punish consensual homosexual activity as demonstrated by three Idaho Supreme Court cases from the 1950s. In *State v. Wilson*, 78 Idaho 385, 388 (1956), the Court referred to the defendant's consensual homosexual activity as a "crime committed against society" and affirmed his sentence because he was "an habitual, persistent homosexual offender." *In State v. Larsen*, 81 Idaho 90, 98 (1959), the Court upheld the conviction after the defendant challenged the prosecutor's argument that "urged the jurors to enforce the law and to halt an outbreak of homosexual practices in the city." And in *State v. Moore*, 78 Idaho 359, 363 (1956), that Court affirmed the denial of probation to one of the defendants because "the State made a showing of various forms of homosexual activity on the part of the accused, extending over a period of twelve or thirteen years."

reason, courts "insist on knowing the relation between the classification adopted and the object to be attained." *Romer*, 517 U.S. at 632; *see also Heller*, 509 U.S. at 321 (explaining the classification must "find some footing in the realities of the subject addressed by the legislation").

The State has offered no justification for the distinction beyond arguing that Menges' conviction was for committing a crime against nature, which is a different conviction than statutory rape. While this is true, it bears repeating, that at the time of Menges conviction, he could not have been prosecuted for statutory rape.

Following *Lawrence*, the State can have no rational basis for requiring a male who engages in consensual sex with another male to register as a sex offender, where the State does not require a similarly situated male who has consensual sex with a female to register as a sex offender. Likewise, the state cannot have a rational basis for requiring on 18-year-old who has consensual sex with a 16-year-old to register, but not requiring another 18-year-old who has consensual sex with a 16-year-old not to register solely on the basis on the sex of the 16-year-old. *Menges*, 2021 WL 1894154, at *21. Because the State has not put forward any other justification, the Court will not speculate what other interest it might have in requiring Menges to register.

The Court finds that Menges has stated a likelihood of success on his equal

protection claim. Simply put, there is no rational basis for forcing Menges to register as a sex offender on the basis of his 1994 conviction for engaging in oral or anal sex with a 16-year-old male when he was 18, but not forcing another male to register as a sex offender who was convicted in 1994 for engaging in vaginal sex with a 16-year old female when he was 18. *See Doe v. Jindal,* 851 F. Supp. 2d 995, 1009 (E.D. La. 2012); *State v. Limon*, 280 Kan. 275, 306, 122 P.3d 22, 40 (2005).

### F.    Preliminary Injunction

As discussed above Doe and Menges are likely to prevail on their claims that Idaho is violating their constitutional rights. Doe and Menges are both likely to succeed on their claim that Idaho violates their right to substantive due process. Doe is likely to succeed on his claim that Idaho violates his right to procedural due process. And, Menges is likely to prevail on his claim that Idaho violates his right to equal protection of the law.

Doe and Menges have also demonstrated irreparable harm. Idaho requires both Plaintiffs to register as sex offenders on the basis of their pre-*Lawrence* crime against nature convictions in violation of their constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This is especially true when

the constitutional violations complained of are actively ongoing through the enforcement of an unconstitutional law. *See Great N. Res., Inc. v. Coba*, 2020 WL 6820793, 2–3 (D. Or. 2020). Further, being required to register subjects both Plaintiffs to the label of "sex offender" and the multiple harms of restricting where they may live, work, and travel. They are also required to annually update their registration and pay the registration fee or face further prosecution. The burdens of registration harm both Doe and Menges daily.

Finally, the Court finds that the balance of the equities and public interest tips in favor of an injunction. Doe and Menges are harmed daily by being required to register as sex offenders and the violation of their constitutional rights. While the State has an interest in protecting the public from sex offenders, it can have no interest in protecting the public from individuals who engaged in consensual sexual conduct that post-*Lawrence* could not be criminalized.[15] Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citations omitted).

───────────────

[15] The State makes much of the documents underlying Doe's conviction allegedly showing that Doe's conduct was non-consensual. But, those documents have not been authenticated and the Court may not rely on them for the truth of any matter asserted therein. The only documents properly before the Court related to Doe are his judgment of conviction and the information he pled guilty to. Neither of those documents contain any element of non-consent.

### G.      Conclusion

The Court finds that Doe and Menges have failed to state a claim upon which relief can be granted as to their standalone challenges to I.C. § 18-6605. While historically used to discriminate against homosexuals, Idaho's crime against nature law has now been interpreted by the Idaho Supreme Court to bring it within the holding of *Lawrence.* Therefore, I.C. § 18-6605 neither violates Plaintiffs' substantive due process nor is it unconstitutionally vague. Because Plaintiffs' claims regarding I.C. § 18-6605, standing alone, are legally foreclosed they cannot be saved by amendment. Accordingly, the Court will dismiss with prejudice Plaintiffs' standalone claims that I.C. § 18-6605 is unconstitutionally vague and violates their due process.

Idaho's sex offender registration statute, however, is a different matter. As discussed above, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits based on Idaho's reliance on Plaintiffs' pre-*Lawrence* crime against nature convictions as a basis for requiring them to register as sex offenders. Plaintiffs have demonstrated irreparable harm both by way of the ongoing constitutional violations they are suffering and the burdens of sex offender registration. Finally, the balance of the equities and public interest tips in Plaintiffs' favor. Accordingly, the Court will grant Plaintiffs' motion for a

preliminary injunction and enjoin the State from forcing them to register as sex offenders.

## ORDER

**IT IS ORDERED that:**

1.      Defendants' First Motion to Dismiss (Dkt. 30) is MOOT.

2.      Defendants' Second Motion to Dismiss (Dkt. 42) is GRANTED IN PART and DENIED IN PART as described above. Plaintiffs' claims regarding I.C. § 18-6605, unrelated to I.C. § 18-8301, *et seq.* are DISMISSED WITH PREJUDICE.

3.      Defendants' Motion to Supplement (Dkt. 72) is GRANTED to the extent the Court has reviewed the supplemental materials.

4.      Plaintiffs' Motion for Preliminary Injunction (Dkt. 49) is GRANTED. The State of Idaho is ENJOINED from requiring John Doe and Randal Menges to register as sex offenders under I.C. § 18-8301 *et seq.*

5.      Bond is WAIVED.

6.      The Parties shall meet and confer and file an amended litigation plan within 30 days of this order.

DATED: September 8, 2021

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 47**